*In re* LORENZO JONES, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DOROTHY JONES, Respondent-Appellant.)

First District (2nd Division)   No. 76-934

Opinion filed April 11, 1978.

James J. Doherty, Public Defender, of Chicago (Frances Sowa and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BROWN delivered the opinion of the court:

The respondent, Dorothy Jones, appeals from a judgment of the circuit court of Cook County finding that her son, Lorenzo Jones, was neglected pursuant to sections 2—4(1)(a) and 2—4(1)(b) of the Juvenile Court Act. Ill. Rev. Stat. 1973, ch. 37, pars. 702—4(1)(a), 702—4(1)(b).

The respondent raises the following issues on appeal: (1) whether the trial court's finding of neglect as to proper or necessary care (Ill. Rev. Stat. 1973, ch. 37, par. 702—4(1)(a)) is contrary to the manifest weight of the evidence; (2) whether the trial court's finding of neglect as to injurious environment (Ill. Rev. Stat. 1973, ch. 37, par. 702—4(1)(b)) is contrary to the manifest weight of the evidence; and (3) whether the trial court committed prejudicial error when it attributed to the medical doctor a statement relative to the cause of injury which the doctor did not make.

A petition for adjudication of wardship was filed on November 13, 1975, alleging the child was neglected by reason that his environment was injurious to his own welfare. (Ill. Rev. Stat. 1973, ch. 37, par. 702—4(1)(b).) The child was placed in the temporary custody of the guardianship administrator of the Department of Children and Family Services. At the subsequent temporary custody hearing, the trial court found that there was probable cause to establish that the child was neglected based on injurious environment, and temporary custody to the guardianship administrator was affirmed. The trial court ordered that the child be placed in a temporary shelter care facility.

Trial on the petition for adjudication of wardship was held on February 26, 1976. Prior to trial, the petition was amended to add a count which alleged that the child was neglected as to proper or necessary medical or

other remedial care necessary for his well-being. Ill. Rev. Stat. 1973, ch. 37, par. 702—4(1)(a).

At trial, Dr. Cheng Lin testified that he first saw Lorenzo Jones on February 20, 1975, when he admitted the child to Ingalls Memorial Hospital for acute bronchitis and a "failure to thrive." He stated that the child, who had weighed approximately 9 pounds at birth, was only 11 pounds, 12 ounces at 7 months of age, when he was admitted to the hospital. He considered this to be underweight, stating that a baby normally doubles its weight by the age of 3 or 5 months. He testified that a series of laboratory tests was performed and no organic cause was found for the failure to thrive. He testified that he did not think that the acute bronchitis nor the sickle cell trait could have caused Lorenzo's lack of weight gain, and that Lorenzo weighed 12 pounds, 6 ounces when he was discharged on February 26, 1975. Dr. Lin testified that he was led to the belief of inappropriate feeding by the mother since he couldn't find any evidence of organic disease and since the child gained proper weight during this one week hospitalization.

Dr. Lin testified that the emergency room references he had received stated that the child was brought to the emergency room of Ingalls Memorial Hospital on September 24, 1975, because of burns on both feet, and that Lorenzo was referred to him for further treatment. He stated that his nurse called the parents on September 25 or 26, 1975. He testified that he examined Lorenzo at his office on September 27, 1975, and the child had first and second degree burns from the ankle joint down to both feet. He described the burns as follows: "The burns—lesions was [sic] symmetric on both sides of the feet below both ankle joints all the way down to both feet." He found that the burns were infected, in that there was pus discharge from the burn lesions, and there was a pus discharge on the top of the dressing, which appeared to him to be the one that was put on in the emergency room. Lorenzo was then admitted to Ingalls Memorial Hospital, and discharged "around" October 25 or 26, 1975. Dr. Lin testified that Lorenzo was given antibiotics for the infection, physical therapy in the form of whirlpools and exercise to prevent scar formation. He stated that Lorenzo underwent a skin graft on his left foot on October 15, 1975. He testified that the mother saw Dr. San Jose, the surgeon, a week after October 23, 1975, for the followup of the burns and the skin graft.

Dr. Lin testified that on or about November 7, 1975, Lorenzo was re-admitted to Ingalls Memorial Hospital, suffering from acute bronchitis and gastro-enteritis (diarrhea), and the burn lesions were healing. Dr. Lin reported the case to the social service worker at the hospital who contacted the Department of Children and Family Services.

On cross-examination, Dr. Lin testified that Lorenzo weighed 18

pounds, 9½ ounces on September 27, 1975, and his health was in good condition, besides the burns on the legs.

Arthur Edelhart, staff development coordinator for Emergency Protective Services, Department of Children and Family Services, testified that he saw Lorenzo in Ingalls Memorial Hospital and visited Dorothy Jones at home on November 11, 1975. He stated that the Department of Children and Family Services had received two reports from Ingalls Memorial Hospital, one relating to the September 1975 hospitalization, and the other relating to the November 1975 hospitalization.

Edelhart testified that Dorothy Jones told him that Lorenzo's "failure to thrive" was due to sickle cell anemia, and he replied, having checked Lorenzo's medical records, that Lorenzo had sickle cell trait.

Edelhart testified that Dorothy Jones had told him that she had been preparing to wash her kitchen floor and filled a pail with hot water from the bathtub and left it on the kitchen floor; that her four-year old threw a basketball at the pail which knocked the pail over and the water in it spilled on Lorenzo. He stated that she told him that she was in the bathroom when it happened, and heard it happen. He stated that she showed him a yellow, 2½-gallon pail, and told him that it was the one that was filled with hot water. He testified that he told her that he did not see how the injuries could have occurred as she described, since burn patterns from splashing water would be irregular, and it was his opinion that since the burn patterns were "straight line" across Lorenzo's feet, it seemed more likely to him that Lorenzo was emersed in standing water rather than having had water flowing and spilling over him. He stated that she said she did not bring Lorenzo back to the hospital to have his bandages changed because it was too cold to go outside with him and that it was her understanding that a visiting nurse would come to her home to change the bandages.

Sharon Billinger, a social worker with the Department of Children and Family Services, testified that she visited Dorothy Jones in her apartment on November 25, 1975. She stated that Dorothy Jones told her that she filled a garbage can with hot water to clean it, placed it on the kitchen table, and while she was in the bathroom, her older son somehow hit a basketball inside the garbage can which knocked it over. Billinger testified that Dorothy Jones showed her a two-feet-tall, white bucket, and stated that she told her she did not show Edelhart this bucket because it was dirty. Billinger testified that Dorothy Jones told her that Lorenzo's bandages had gone unchanged because the doctor at the hospital had told her a nurse would be sent out to change the bandages and that he had been malnourished because of the sickle cell trait.

Dorothy Jones testified that Lorenzo was born on July 19, 1974. She

stated that Lorenzo was holding onto a kitchen table chair and Johnnie, her oldest child, was playing with a basketball when she went into the bathroom; that she had been in the bathroom "about two minutes" when she heard a noise and heard Lorenzo holler; that the ball went in the kitchen and hit a garbage pail she was washing and the pail spilled over; that she took Lorenzo from the kitchen to the bedroom and laid him on the bed.

She stated that after Lorenzo's release from the hospital on or about October 26, 1975, she did not keep her return appointment on November 3 or 4, 1975, because it was cold, snowing, raining and she had no money. She stated that she called and made another appointment which she kept.

On cross-examination by the Assistant State's Attorney, Dorothy Jones testified that she had shown Edelhart an orange bucket and told him that it was the bucket that fell over. She testified that the bucket that was knocked over was white, 2½ feet high, about half full with hot water from the kitchen faucet to scald it clean and located in the middle of the kitchen floor about two feet from the kitchen table. She denied telling Billinger that the bucket was on the kitchen table. She testified that after she laid Lorenzo on the bed and pulled his pants off, she went back in the kitchen and mopped the floor so that the other shoeless children present wouldn't step in hot water. She stated that her brother-in-law came down and stayed with Lorenzo while she went to call an ambulance; that when she returned, her fiance, Robert Mobley, had taken Lorenzo to Ingalls Memorial Hospital in an ambulance.

She further testified on cross-examination that Ingalls Memorial Hospital and Dr. Lin's office are about a mile from her home; that she was told not to change the bandages but she knew how to change the bandages; that the bandages were dirty with yellow stains when she took Lorenzo to Dr. Lin's office approximately three days after he was taken to the emergency room and that they were in that condition for about one week prior to going to Dr. Lin's office.

After arguments of counsel, the trial court found that Lorenzo was a neglected child and adjudicated him a ward of the court. The trial court stated that the finding of neglect was "* * * predicated upon injurious environment and also predicated upon lack of proper and necessary care for the well-being of minor respondent." As to Lorenzo's burns, the trial court stated:

"* * * The doctor described the burns on the child's feet from the ankle down to the bottom of his feet and he also described the burn line at the ankle being symmetrical and formed a line across the ankle bone on each of the feet.

Doctor testified in his opinion this couldn't have been the result of a splash but rather it indicated to him emersion in water.

\* \* \* I find [mother's] explanation to be highly improbable and inconsistent with the nature and description of injuries.

I find that the burns in the case at bar were not brought about accidently, but rather by design."

Respondent Dorothy Jones' motion for a new trial was denied. At the dispositional hearing, the court appointed the guardianship administrator of the Department of Children and Family Services as guardian of Lorenzo's person, with the right to place.

In *In re Stilley* (1977), 66 Ill., 2d 515, 519-20, 363 N.E.2d 820, our supreme court enunciated the guiding principles to be followed in child-neglect cases:

"Under the Juvenile Court Act a child is neglected if his or her support, educational, medical or 'other remedial' needs are not met or if the child's 'environment is injurious to his welfare.' (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1).) Such determination of neglect is, of course, in the province of the circuit court, but it is not an easy determination. Necessarily, it varies with each case. In general, neglect 'is the failure to exercise the care that the circumstances justly demand. It embraces wilful as well as unintentional disregard of duty.' (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624.) *But* neglect 'is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes [sic].' *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624.

Given the varying circumstances of neglect cases, the trial court must have broad discretion to reach a just determination. [Citations.] Only where there has been an abuse of discretion or the judgment has been against the manifest weight of the evidence should the decision be disturbed on appeal. The delicacy and difficulty of child-custody and child-neglect cases justify the burden of responsibility placed on the trial court and the ensuing deference which must be given to the trial court. The trial court has the opportunity to observe the demeanor and conduct of parties and witnesses. \* \* \*"

■■ The essential policy consideration and the standard to be applied in child-neglect and custody cases is the best interests and welfare of the child. *In re Stilley*, at 520-21.

■■ Regarding the trial court's statement that the doctor testified that in his opinion the burns could not have been the result of a splash but rather it indicated to the doctor emersion in water, the trial court was mistaken since this was Edelhart's opinion and not the doctor's opinion. However, this error was not prejudicial, since the trial court relied on the description

of the burns in determining causation. From that description it could conclude, irrespective of the opinion testimony, that Lorenzo's burns "* * * were not brought about accidentally, but rather by design." "On medical matters on which laymen are competent to judge, no expert testimony is required to permit a conclusion as to causation." *Jackson v. Navik* (2d Dist. 1976), 37 Ill. App. 3d 88, 95, 346 N.E.2d 116, *appeal denied* (1976), 63 Ill. 2d 557. Furthermore, the trial court's error was not prejudicial, in view of the other facts and circumstances in this case which support the trial court's finding of neglect.

As to the February 1975 hospitalization, and Lorenzo being underweight, it was the doctor's opinion that Lorenzo's mother had not properly fed the child, since he couldn't find any evidence of organic disease and since the child gained "proper weight" during that hospitalization; the child gained 10 ounces during his six-day hospital stay, while he was suffering from acute bronchitis.

Lorenzo's mother did not change his bandages between September 24 and 27, 1975, despite her awareness of the condition of his bandages. The trial court, having observed her demeanor while testifying and being in the best position to assess her credibility, could choose not to believe her testimony that she was told not to change the bandages and that a visiting nurse would come to her home to change the bandages.

Between Lorenzo's discharge on or about October 26, 1975, and his re-admission on or about November 7, 1975, he developed acute bronchitis and gastro-enteritis (diarrhea), and his mother missed one physician's appointment during that time period.

■■ We hold that the trial court's finding of neglect under both counts of the petition was not contrary to the manifest weight of the evidence. "* * * There is no evidence that the court failed to consider the child's welfare as its primary consideration." *In re Stilley* (1977), 66 Ill. 2d 515, 521, 363 N.E.2d 820.

Accordingly, the judgment of the circuit court of Cook County, is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.