OPINION OF THE COURT
Nicholas L. Pitaro, J.
The Commissioner of Social Services, the petitioner herein, filed two petitions pursuant to article 10 of the Family Court Act against the respondent alleging neglect of her two chil *1027 dren, Laura, age 10, and Darnell, age 8. The petitions were originally filed on March 17, 1977, and were subsequently amended on November 3, 1977, and January 19, 1978.
The petitions allege that the respondent has impaired the physical, mental and emotional condition of her child, Laura, by her failure to exercise a minimum degree of care "in failing to supply the child with proper psychiatric care despite the fact that, Laura has exhibited the need for psychiatric treatment since 1974”; that the respondent is mentally ill and incapable of taking care of her two children, Laura and Darnell; and as a result of the above, the mother’s second child, Darnell is also a neglected child. The children have been remanded to the Commissioner of Social Services for temporary care, pending the outcome of the fact-finding hearing which was held before this court.
At the hearing, Joseph Rosenthal, the guidance counselor at Public School No. 138 testified as a witness for the petitioner. It was his testimony, that the child, Laura, had been referred to him as a result of her hyperactivity when she was in the first grade, in 1975. At that time he recommended to the respondent that she take Laura to the Brooklyn Center for Psychotherapy for psychiatric treatment.
According to the records of the Brooklyn Center, introduced into evidence by the petitioner, Laura began treatments on May 21, 1976 and was seen for a total of four sessions. The case was terminated by the center in July, 1976 due to the patient’s nonattendance at the sessions, despite many attempts by the center to motivate the mother to bring Laura in for therapy.
In October, 1976, the guidance counselor recommended that the respondent take Laura to the Brooklyn Jewish Hospital. The witness testified that the mother did not keep many appointments with Laura at the hospital either. Mr. Rosenthal testified that the respondent felt that nothing was wrong with Laura, and that her problem stemmed from school. He stated that the mother was given the alternative of taking Laura to another school, but that the mother declined. The witness further testified that in his opinion Laura’s problems would have been alleviated if the mother had given her cooperation.
Pearl Kornberg, a case worker with the Catholic Home Bureau, testified that the respondent failed to follow through on plans for obtaining psychological help for Laura. She *1028 testified that all efforts which were made for getting psychological help for the child were thwarted by the respondent.
The respondent, June Ray, testified that Laura has problems in school, that she told the guidance counselor that these problems were the fault of the school and were not the result of any personal or emotional causes. The respondent purposely discontinued the therapy based on her feeling that it was not necessary. The respondent further testified that she wants both of the children returned to her. The respondent was remanded in June, 1977 for a short evaluation. At that time she was diagnosed as having "Transient situational disturbance adjustment reaction of adult life.” It was recommended that she be referred for out-patient psychiatric treatment.
Dr. G. Emil Piaña, a psychiatrist associated with the Catholic Home Bureau, testified as a witness for the petitioner, that he examined Laura for approximately one hour on June 22, 1977 when she was nine years of age to determine whether she was disturbed and if so, to isolate the cause. During said examination the child stated to Dr. Piaña "I don’t like to go back to my mother because she hits me with a baseball bat.” The psychiatrist concluded at that time that Laura was severely neglected both emotionally and physically and that Laura needed tranquilizers to counteract her hyperactivity. The witness examined the child again on March 2, 1978, at which time he found she was doing better in the foster home but again diagnosed the child as emotionally disturbed. The psychiatrist testified that by emotional neglect he meant that the "basic needs of the child are not met.” He also stated that based upon her intelligence, it is his opinion that, what Laura had told him was not imagined.
The statutes on which the petitioner relies are section 1012 (subd [f], par [i], cl [A]) and subdivision [h] of section 1012 of the Family Court Act. These sections state:
"(f) 'Neglected child’ means a child less than eighteen years of age
"(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care
"(A) in supplying the child with adequate food, clothing, shelter or education * * * or medical, dental or optometrical *1029 or surgical care, though financially able to do so or offered financial or other reasonable means to do so”.
Subdivision (h) of section 1012 defines "Impairment of emotional health” and "impairment of mental or emotional condition” as "a state of substantially diminished psychological or intellectual functioning in relation to, but not limited to, such factors as failure to thrive, control of aggressive or self-destructive impulses, ability to think and reason, or acting out or misbehavior, including incorrigibility, ungovernability or habitual truancy; provided, however, that such impairment must be clearly attributable to the unwillingness or inability of the respondent to exercise a minimum degree of care toward the child.”
This court finds based upon the testimony and documentary evidence adduced at the trial, that Laura Ray is a neglected child. Based upon the medical testimony this court finds that Laura’s emotional health is impaired and that this impairment is clearly attributable to the unwillingness of the respondent to pursue a course of therapy with Laura, psychotherapy which was recommended by the guidance counselor, social worker, and psychiatrist. Further, although efforts were made to aid the respondent in enrolling Laura in psychotherapy programs, the respondent still failed to follow up by taking Laura for the scheduled sessions, on the ground that the respondent felt that the therapy was not good for Laura.
It is obvious that the lack of psychiatric care for the child does not per se involve physical neglect of the child. However, the statute also addresses itself to the impairment of a child’s, "mental or emotional condition,” as well as the child’s physical condition. (Family Ct Act, § 1012, subd [f], par [i].) Thus, the respondent mother’s failure to provide medical care as required by section 1012 (subd [f], par [i], cl [A]) of the Family Court Act may be interpreted to include psychiatric medical care where it is necessary to prevent the impairment of the child’s emotional condition. Although this case is not analogous to the situations in which a finding of neglect, is made so that a court may order surgery in an emergency to protect the life of the child "Court intervention may be justified not only where there is an emergency, but also whenever medical intervention will have a beneficial effect.” (12 A Zett-Edmonds-Battrey-Kaufman, NY Civ Prac, § 31.04 [6].)
The court in Matter of Sampson (37 AD2d 668, 669, affd 29 NY2d 900) stated, "Initially a parent has the duty and obliga *1030 tion to provide medical care for a child, but if he neglects that duty the State is authorized to act in his stead.” In Sampson (supra), the court authorized surgery over the mother’s religious objections on the ground that the surgery was necessary to avoid psychological impairment, although not necessary to protect the life of the child. (Also, see, Matter of Gregory S, 85 Misc 2d 846.)
No evidence was presented to this court proving that the respondent’s other child Darnell is in imminent danger of becoming neglected. Section 1046 (subd [a], par [i]) of the Family Court Act provides that "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child”. The petitioner has not shown by a preponderance of the evidence that Darnell is suffering or likely to suffer from neglect. (Matter of Katherine J., 71 Misc 2d 47; Matter of Anthony, 81 Misc 2d 342; Matter of Santos, 71 Misc 2d 789.)
Accordingly, this court finds, based upon a preponderance of the evidence that Laura Ray is a neglected child. The petition against the respondent with regard to Darnell Ray is dismissed.
This case is calendared for October 5, 1978, Part B, Kings County Family Court, 283 Adams Street, Brooklyn, New York, for a dispositional hearing pursuant to section 1052 of the Family Court Act.