IN THE MATTER OF: CATHERINE DIANE THOMPSON

No. 8321DC370

(Filed 20 September 1983)

**Infants § 4— neglected child—sufficiency of evidence**

A 5-year-old child was a "neglected" child within the meaning of G.S. 7A-517(1) where the evidence showed that respondent mother, as a disciplinary measure against what she viewed as her child's improper sexual conduct, struck the child with a belt and, on at least three occasions while bathing the child, inserted her finger or a wash cloth into the child's vagina and washed with sufficient force to cause the child to bleed, and where a pediatrician who examined the child and a social worker recommended that the child be evaluated to determine if she was developing normally and to have the child treated if necessary, but respondent mother refused to permit evaluation of the child by the Child Guidance Clinic. Therefore, the trial court erred in dismissing a petition by a county department of social services for an order directing respondent mother to accept and cooperate with petitioner's Protective Services for Children and to permit evaluation and appropriate treatment of the child by the county Child Guidance Clinic.

APPEAL by Guardian ad Litem from *Tanis, Judge.* Order entered 16 December 1982 in District Court, FORSYTH County. Heard in the Court of Appeals 26 August 1983.

Petitioner, Forsyth County Department of Social Services (DSS) filed a juvenile petition on 4 November 1982, alleging that Catherine Diane Thompson, a minor, is a neglected child as defined by G.S. 7A-517(21) in that the child does not receive proper care, supervision or discipline from her mother, the respondent. The petition alleged specifically that on or about 26 October 1982 the mother inflicted upon the child's face linear bruises, caused injuries to the child's vaginal area by excessive washing, and that the mother had admitted to DSS that such vaginal abrasion had also occurred during past washings of the child. The petition alleged further that upon investigation, DSS determined that in

order to insure that the child receives proper care and supervision the child would require evaluation and appropriate treatment at the Child Guidance Clinic of Forsyth County and that the mother would require evaluation at the Family Counseling Unit of the Department of Social Services.

A hearing on the merits of the petition was held on 16 December 1982. The testimony presented by the petitioner tended to show that on 27 October 1982, Daisy Chambers, principal of Latham School, called the Forsyth County Department of Social Services and reported that Catherine Thompson, a five year old pre-kindergarten student, had a bruised face and had complained that the mother had been "digging into" her vagina with her finger or a washcloth during baths. Mrs. Chambers checked the child's underwear and observed some spots of blood.

Stephanie Hayes, a social worker from the Child Protective Service of the Forsyth County Department of Social Services, went to Latham School and spoke with the child. Catherine repeated the complaint, stating that her mother was angry with her for straying down the street; that her mother hit her on the face with a belt and threw her on the floor. The child was then given a doll and she demonstrated the treatment she had received. Catherine told Ms. Hayes that after being struck, her mother placed her in the bathtub, opened her legs and "dug into" her with a washcloth. Further, that although she was crying at the time, her mother proceeded to lay her on a towel on the bed to "check her" and "dig some more." Catherine stated that this happened at each bath and that she often bleeds.

After leaving Latham School, Ms. Hayes went to the child's home and talked with her mother, Marie Hynes. Ms. Hynes admitted that she had often bathed Catherine by scrubbing her vaginal area because she was concerned that the child was masturbating excessively. Ms. Hynes also acknowledged that she had been upset with Catherine the night before, had struck the child with her hand and then scrubbed her because she had been flirting with some of the little boys in the neighborhood. Ms. Hynes stated that she felt this was an appropriate disciplinary measure to curb her child's sexual exploration.

Later that afternoon, with the consent of her mother, Catherine was taken to Reynolds Health Center where she was ex-

amined by Dr. Michael Lawless, a pediatrician. Dr. Lawless testified that his examination revealed a linear bruise on the child's forehead, a second oval bruise on the side of her face, a third bruise on her chest, and significant irritation and abrasion of the internal genital area which oozed blood easily. Dr. Lawless testified that it was not likely that the linear forehead bruise had been caused by a human hand, but rather was consistent with being hit with a belt.

Dr. Lawless also testified that he discussed proper methods of feminine hygiene with Ms. Hynes and recommended that Catherine be evaluated by the Child Guidance Clinic to be sure she was developing normally. He also discussed Ms. Hynes' background and she revealed to the doctor that she had been sexually abused as a child. Dr. Lawless then indicated that Ms. Hynes might be overreacting to her child's sexual development in light of her own childhood experience and suggested that she accompany Catherine to the Child Guidance Clinic, and that both could benefit from some counseling. He then made a referral for the child to the Clinic.

In following up on her initial investigation, Ms. Hayes found that Ms. Hynes had not taken the child to be evaluated. Ms. Hynes stated to her that she did not feel it was necessary to take Cathy to the Clinic since she had already discussed proper hygiene with Dr. Lawless. During this visit, Mr. Cordell Roudy, Ms. Hynes' boyfriend, told Ms. Hayes that Catherine's mother did not need to be told how to raise her child and ordered the social worker from the home with a curse after threatening to hit her.

The respondent mother offered the testimony of several neighbors to show that they had no knowledge of any abuse of the child, that the child was well fed and clothed, that the Hynes' home was very neat and that Ms. Hynes was a good mother.

After hearing the testimony of all parties and the arguments of counsel, the district court found as a fact that Catherine's mother had become upset with her, struck her with a belt, and had washed her genital area with sufficient force to cause the child to bleed on at least three occasions. The court also found that the pediatrician had reported several bruises on the child; that he had observed internal abrasions of the child's genitals which oozed blood easily; that he had referred the child to the

Child Guidance Clinic for evaluation, but that Ms. Hynes refused to follow through with that recommendation. In addition, the court found that Ms. Hynes' home was usually well kept and Catherine was well fed and well clothed.

Finally, the court found that the petitioner and the child's guardian ad litem both recommended that the child be evaluated to determine if the child was developing normally and to have the child treated if necessary; that Ms. Hynes accept and cooperate with Protective Services for Children of Forsyth County DSS; and that Ms. Hynes receive counseling with the Family Counseling Unit of DSS, in order to better cope with her child's sexual development.

Based upon these findings, the court concluded as a matter of law that Catherine was not a neglected child as defined by G.S. 7A-517(21) and the petition was dismissed. The child's guardian ad litem appeals the dismissal of the petition on the grounds that the facts as found by the court do not support its conclusions of law and consequent dismissal of the petition.

*Connolly, O'Toole & Sherman, by Daniel E. O'Toole, for the juvenile appellant.*

*No brief filed, for the respondent appellee.*

JOHNSON, Judge.

It is unchallenged, and the court found, that the five year old child Catherine was struck with a belt by her mother and then scrubbed until she bled into her bath water, as a disciplinary measure against what her mother viewed, correctly or incorrectly, as her child's improper sexual conduct. Ms. Hynes, the child's mother, stated that she felt this was an appropriate disciplinary measure, and the court found that the child bled from this rough handling on at least three occasions. The results of these disciplinary measures were multiple bruises and abrasions. The child's examining pediatrician, guardian ad litem, and the petitioner DSS all recommended that the child be evaluated by the Child Guidance Clinic of Forsyth County to determine if the child was developing normally and to have the child treated if necessary and the respondent mother, after being so advised, failed to take the child to be evaluated. However, the court concluded

that Catherine was not a neglected child as defined by G.S.
7A-517(21).

The issue presented in this appeal is whether a child who is
found to have been disciplined so severely that bruises and inter-
nal abrasions result is a "neglected" juvenile within the meaning
of G.S. 7A-517(21). A neglected child is defined by that statute, in
pertinent part, as a "juvenile who does not receive proper care,
supervision, or discipline from his parent . . . or who is not pro-
vided necessary medical care or other remedial care recognized
under State law, or who lives in an environment injurious to his
welfare . . ." We conclude that Catherine is a neglected juvenile
under this definition and hold that, on the facts found, the court
erred by dismissing the petition.

At the outset, it must be noted that this is not a petition
seeking termination of the respondent mother's parental rights. It
appears from the juvenile petition and the court's order that the
Department of Social Services sought an order primarily direct-
ing the respondent mother to accept and cooperate with the peti-
tioner's Protective Services for Children and to have the child
evaluated by the County's Child Guidance Clinic.

The district court's findings of fact establish that the re-
spondent mother struck her child with a belt and, on at least
three occasions while bathing the child, inserted her finger or a
washcloth into the child's vagina and washed with sufficient force
to cause the child to bleed. Under G.S. 7A-517(21), a child who
does not receive proper care, supervision or discipline is a
neglected juvenile. In general, treatment of a child which falls
below the normative standards imposed upon parents by our
society is considered neglectful. *See In re Huber,* 57 N.C. App.
453, 291 S.E. 2d 916, *disc. rev. denied,* 306 N.C. 557, 294 S.E. 2d
223 (1982); *In re Cusson,* 43 N.C. App. 333, 258 S.E. 2d 858 (1979);
*In re McMillan,* 30 N.C. App. 235, 226 S.E. 2d 693 (1976) (willful
failure and refusal to send children to school constitutes neglect).
Should the mistreatment rise to the level of an injury which
creates a substantial risk of impairing the health of the child, it
would constitute abuse under G.S. 7A-517(1). The injuries sus-
tained by Catherine Thompson were not found by the court to
have been of a serious nature. However, the bruises and abra-
sions resulting from Ms. Hynes' disciplining of her five year old

child against what she perceived as her child's improper sexual conduct show methods of care and discipline which are below normal standards, and therefore, establish neglect under G.S. 7A-517(21).

Moreover, decisions of courts in other jurisdictions support the view that "neglect" does not necessarily require a finding of nonfeasance by a parent; malfeasance just as readily qualifies as improper care or discipline. *See In re Jackson*, 81 Ill. App. 3d 136, 400 N.E. 2d 1087 (1980) (physical abuse alone would have supported the finding of neglect); *In Interest of Jones*, 59 Ill. App. 3d 412, 376 N.E. 2d 49 (1978) (a conclusion of neglect sustained upon findings that child had burns on his feet inconsistent with his parents' explanation); *In Interest of S.W.*, 290 N.W. 2d 675 (N.D. 1980) (child found to be "deprived" rather than abused as a result of sustaining multiple bruises from her father's excessive punishment; such punishment falling below minimum standards of care tolerable by the community); *see generally* 17 Ariz. L. Rev. 1055 (1975).

Furthermore, the facts as found by the district court establish that a physician and social worker found the child in need of evaluation and that her mother refused to cooperate. Based upon the testimony of Dr. Lawless, the court found that the doctor examined the child, discussed her condition with her mother and recommended that the child be evaluated by the Child Guidance Clinic. The testimony indicates that the doctor's concern was twofold. First, the mother reported what she considered to be excessive self-manipulation by the child. Second, Ms. Hynes told Dr. Lawless that she had been abused as a child and he expressed his concern that the mother was overreacting to her five year old child's normal curiosity. He then suggested that she accompany the child to counseling and made a referral to the Clinic. The social worker, Ms. Hayes, attempted to facilitate the pair's visit to the Clinic, however, despite these efforts Ms. Hynes did not take Catherine to be evaluated.

This Court, in *In re Cusson, supra*, found that a mother's keeping of her son from therapeutic daycare would constitute a finding that the child was neglected under G.S. 7A-278(4), [predecessor to G.S. 7A-517(21)], in that the child did not receive proper care or discipline or was not provided necessary medical

care. 43 N.C. App. at 336, 258 S.E. 2d at 860. Similarly, in *In re Huber, supra,* a child was held to be a "neglected child" within the meaning of G.S. 7A-517(21) where the child had a severe speech defect which was treatable, but the mother refused to allow the child to receive the necessary medical and remedial care that would allow the child to develop to her full educational and emotional potential. In *Huber* this Court observed that to "deprive a child of the opportunity for normal growth and development is perhaps the greatest neglect a parent can impose upon a child." 57 N.C. App. at 458, 291 S.E. 2d at 919. *See also In the Matter of Ray,* 95 Misc. 2d 1026, 408 N.Y.S. 2d 737 (1978) (a mother's failure to follow through on plans for psychological treatment for her child's hyperactivity as recommended by health officials constituted neglect).

The court's findings regarding the pediatrician and social worker's recommendations that Catherine be evaluated to determine if she is developing normally and be treated if necessary, and the respondent mother's failure to seek the recommended treatment for her child support the conclusion of neglect by reason of the respondent's failure to provide necessary medical care which would consequently deprive the child of the opportunity for normal growth and development. While they are certainly important, findings that the child's home is clean and that she is well fed and clothed are not dispositive on the issue of neglect. Any child whose physical, mental or emotional condition has been impaired or is in danger of becoming impaired as a result of the failure of his or her parent to exercise that degree of care consistent with the "normative standards imposed upon parents by our society," *In re Huber, supra,* may be considered neglected under G.S. 7A-517(21).

Accordingly, the district court erred by concluding as a matter of law, upon the facts found, that Catherine was not a neglected juvenile, and the order entered must be vacated. This cause is remanded to the district court for further proceedings not inconsistent with this decision.

Vacated and remanded.

Judges WHICHARD and EAGLES concur.