ELMORE, Judge.
Respondent parents appeal the order granting custody of C.P. and J.P. to their father W. Penick, and placing R.C. and M.C. in the custody of The Department of Social Services of Cumberland County (DSS) for placement with suitable relatives or other court approved caretaker. Parental rights have not been terminated for either appellant parent. Respondent father and mother (Mr. and Mrs. Collins) are currently married. At the time of the hearing, Mrs. Collins was pregnant with her eighth child. Three children were born to Mrs. Collins during a prior marriage, and are in the custody of their father. The children who are the subject of this appeal are the following four: R.C., a girl, was born to Mr. and Mrs. Collins while Mrs. Collins was married to T. Hartzel. The trial court ordered custody of R.C. to DSS. C.P. and J.P., a twin girl and boy respectively, were born during Mrs. Collins' marriage to W. Penick. The trial court awarded custody of the twins to their father, W. Penick and his wife. M.C., a girl, was born during Mrs. Collins' marriage to Mr. Collins. The trial court ordered custody of M.C. to DSS.
The trial court made the following adjudicatory findings:
4 4. That the following findings are made upon clear, cogent and convincing evidence of record or adduced at trial.
...
9 9. That the minor children [M.C.] and [R.C ] [C.P.] and [J.P.] and [P.H., S.H. and K.H. were living with the respondents [Mr. and Mrs.] Collins and were in their care, custody and control, at the time of the filing of the petition.
10 10. That the respondents [Mr. and Mrs. Collins] engaged in acts of domestic violence in the presence of the minor children.
11 11. That the domestic violence consisted of the respondents yelling at each other, pushing and shoving each other, communicating threats to each other and physical fighting and punching.
12 12. That the acts of domestic violence occurred on a regular and frequent basis.
13 13. That on two or more occasions the minor children witnessed the respondent [Mr.] Collins chasing the respondent [Mrs.]Collins around the house in an effort to assault her.
14 14. That on at least one occasion the respondent [Mrs.] Collins tried to jump out of a moving vehicle while in the presence of the minor children.
...
17 17. That during September, 2001, the respondent [Mr.] Collins spanked the minor child [J.P.] with a wooden paddle and caused bruising to the buttocks of the minor child.
18 18. That the respondent [Mrs.] Collins witnessed the spanking and observed the bruises on the minor child.
19 19. That the respondents [Mr. and Mrs.] Collins kept the minor child [J.P.] home from his school at Headstart for five (5) days to allow the bruising to heal and to prohibit the staff at Headstart from discovering the bruising.
20 20. That the minor child [R.C.] would sometimes squirm or otherwise move about while the respondents [Mr. or Mrs.] Collins were spanking her.
21 21. That on one occasion the respondents [Mr. and Mrs.] Collins tied the minor child [R.C.] to the bed and proceeded to spank her.
22 22. That on at least one occasion the minor child [M.C.] was being held by the respondent [Mrs.] Collins when the respondent [Mr.] Collins assaulted Mrs. Collins.
All four children were adjudicated abused and neglected based on the parents allowing them to at least be exposed to risk of harm. Further findings are recorded in the disposition order:
3. That the respondent [Mrs.] Collins suffers from seizures and has taken medications including Zoloft and Topomax. She is currently taking the Topomax and has not taken any Zoloft since February 2002.
...
5. That the respondent [Mr.] Collins has a highly volatile and explosive temper.
6. That at various and sundry times he has exhibited angry and otherwise violent behaviortowards the minor children and the respondent mother, [Mrs.] Collins.
7. That the relationship between [Mrs.] and [Mr.] Collins is highly volatile and explosive, and has been marked by a significant amount of domestic violence.
8. That the environment created by the respondents ... was a hostile one for the children to live in.
...
11. That the respondents ... have failed to make any progress toward alleviating the conditions which led to the removal of the minor children.
12. That the respondent [Mrs.] Collins is in her third marriage and each of the marriages have been marked by concerns of domestic violence and child abuse or neglect.
...
21. That the respondent [Mrs.] Collins has exhibited periods of depression in the presence of her minor children wherein she spoke of committing suicide, and on one occasion, went so far as to write suicide notes to each of her minor children.
22. That the respondent [Mrs.] Collins has exhibited a pattern of deceptive behavior in her relationships with others including but not limited to, her spouses, her children, the pastor and members of her church and others that she comes into contact with.
...
31. That the respondent [Mr.] Collins downloaded pornographic material onto the computer used by the children.
...
34. That there is a strong likelihood that the children have been exposed to pornography while residing with the respondents....
...
40. That each of the children is doing well [in their placements: the twins with Mr. Penick, R.C. with Mr. Hartzel and his family, and M.C. in foster care] and they are in a safe and nurturing environment.
...
42. That the respondent [Mrs.] Collins is not a fit or proper person to have care, custody or control of the minor children.
43. That the respondent [Mr.] Collins is not a fit or proper person to have care, custody or control of the minor children. ...
50. That the respondent [Mr.] Collins has not paid any child support during the pendency of this action.
I.
Respondents bring separate assignments of error. Mrs. Collins first assigns error to the nine month delay of the adjudication, continuing non-secure custody of the children during that time. We note that Mr. Collins argues the opposite, that he was prejudiced by the denial of a continuance. We will consider both respondents' assignments together.
We review this issue for an abuse of discretion. When a constitutional issue is raised (such as the right to parent one's child), the ruling is fully reviewable on appeal. In re Mitchell, 148 N.C. App. 483, 559 S.E.2d 237 (2002).
Continuances are provided for in our General Statutes, section 7B-803, which states:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile. . . .
N.C. Gen. Stat. § 7B-803 (2003).
Considering the multiple parties involved and the complexity of this case, and considering the record and transcript, it seems that the trial court did everything within its power to both movethe case along and give it proper attention. There has been no showing by Mrs. Collins or Mr. Collins that a nine month delay was more or less harmful or beneficial to their case or to the children. We discern no error with the trial court's discretion in the pacing of this case. Both respondents' assignments of error on this issue are without merit.
II.
Mrs. Collins next assigns error to the trial court's finding her not fit to mother J. and C.; in finding that their father, Mr. Penick, is fit to have custody; in finding that the disposition be filed in a civil custody case; and in leaving visitation terms to Mr. Penick's discretion.
In a non-jury adjudication of abuse or neglect, "the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Findings of fact not challenged on appeal "are deemed supported by competent evidence" and are binding on this Court. In re Padgett, 156 N.C. App. 644, 577 S.E.2d 337, 340 (2003). This Court reviews the trial court's conclusions of law to determine whether they are supported by the findings of fact. Helms, 127 N.C. App. at 511, 491 S.E.2d at 676.
Once the trial court adjudicates a child as abused or neglected, the court moves to the dispositional stage at which it considers solely the best interests of the child. In re Pittman, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567, disc. review denied,356 N.C. 163, 568 S.E.2d 608-09 (2002), cert. denied, ___ U.S. ___, 155 L. Ed. 2d 673 (2003). We review that determination for abuse of discretion. Id.
The Guardian Ad Litem report provides ample basis for the trial court's findings. The findings support the conclusions. According to the transcript neither Mrs. nor Mr. Collins testified at the hearing.
Concerning the finding that Mr. Penick is fit to have custody of his children, we note that a natural parent has a constitutional right to the custody of his child, but that "the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody . . . ." Adams v. Tessener, 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001) (citing Jolly v. Queen, 264 N.C. 711, 715-16, 142 S.E.2d 592, 596 (1965)). See also Barger v. Barger, 149 N.C. App. 224, 560 S.E.2d 194 (2002) (holding that a natural parent is properly awarded custody when found to be a fit parent). The trial court is required to make a finding that a natural parent is unfit before denying custody to that parent. See Moore v. Moore, 160 N.C. App. 569, 587 S.E.2d 74, (2003) (reversing the trial court's order denying reinstatement of appellant's visitation rights with his minor child because there was no finding of unfitness).
In this case, the trial court made the requisite findings of unfitness of the respondents and found Mr. Penick to be fit to have custody of the twins. Absent a finding of unfitness of Mr. Penick, he has a right to the custody of his children. The trial courtmade no findings of fact which would require a finding of unfitness. The evidence before the trial court was that the children were happy in their placement. There is no evidence in the record to suggest a need for reversal of the trial court's conclusions. We therefore affirm the trial court's findings and conclusions.
At the end of the hearing, the trial court made it clear that DSS was required to continue with reunification efforts and that a permanent plan would be established in the next hearing, but that custody would not be returned to Mr. and Mrs. Collins absent significant changes. There is a difference in the standard of proof for custody as opposed to a termination of parental rights in that while parental rights may not be terminated for threatened future harm, DSS may obtain temporary custody of a child when there is a risk of neglect in the future. In re Evans, 81 N.C. App. 449, 344 S.E.2d 325, (1986) ( citing See In re Phifer, 67 N.C. App. 16, 26, 312 S.E. 2d 684, 689 (1984) (emphasis added)). On that basis the trial court's findings are appropriate and supported by the evidence. It is still within the respondents' purview to make changes which would qualify them as fit parents at a future hearing, but for the present, the findings are supported by the clear and convincing competent evidence.
III.
Mrs. Collins next assigns error to the trial court's finding that the children were abused, arguing there was insufficient evidence. The criteria for an order of nonsecure custody are laid out in N.C. Gen. Stat. § 7B-503:
(a) When a request is made for nonsecure custody, the court shall first consider release of the juvenile to the juvenile's parent, relative, guardian, custodian, or other responsible adult. An order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true, and
...
(3) The juvenile is exposed to a substantial risk of physical injury or sexual abuse because the parent, guardian, custodian, or caretaker has created the conditions likely to cause injury or abuse or has failed to provide, or is unable to provide, adequate supervision or protection...
N.C. Gen. Stat. § 7B-503 (2003).
We note that there were no specific findings concerning C.P., however a finding that she was neglected because she was exposed to the risk of harmful behavior is appropriate where the other children, including her twin brother, are abused. The court may consider abuse of other children in determining the custody of a child who has not yet been abused, and the court in its discretion decides what weight to be given that evidence. However, removal of the other children is not mandated by the statute. In re Nicholson and Ford, 114 N.C. App. 91, 440 S.E.2d 852, (1994). In the case at bar, the trial court acted within its discretion.
The conclusions of law were as follows:
1 1. That the juveniles [J.P.] and [R.C.] are abused in that the respondent [Mrs.] and [Mr.] Collins inflicted or allowed to be inflicted upon the juveniles' serious physical injury by other than accidental means. 2 2. That the juveniles [M.C.] and [R.C.] and [C.P.] and [J.P.] are abused in that the respondents [Mrs.] and [Mr.] Collins created or allowed to be created a substantial risk of serious physical injury to the juveniles by other than accidental means.
3 3. That the juveniles [M.C.] and [R.C.] and [C.P.] and [J.P.] are abused juveniles in that the respondents [Mrs.] and [Mr.] Collins created or allowed to be created serious emotional damage to the juveniles.
4 4. That the juveniles [M.C.] and [R.C.] and [C.P.] and [J.P.] are neglected juveniles in that the respondents [Mrs.] and [Mr.] Collins did not provide proper care, supervision or discipline for the juveniles and created an environment injurious to the juveniles welfare for the juveniles to live in.
The evidence showed that the children were exposed to risk of physical injury and inappropriate sexual behavior, and that the respondent parents created conditions that were likely to cause injury or abuse. The trial court took great pains to consider all the evidence, and made a thoughtful order. We affirm the trial court's findings and conclusions.
IV.
Mrs. Collins next assigns error to the trial court's finding that the children were neglected, citing insufficient evidence. Mr. Collins second and final assignment of error contests the finding that R.C. and M.C. were neglected. We find neither assignment persuasive.
A child who is found to have been disciplined so severely that bruises and internal abrasions result is a "neglected" juvenile. In re Thompson, 64 N.C. App. 95, 306 S.E.2d 792 (1983). Here therewere no internal abrasions on record, and the bruising was not as severe as the case cited above, but the bruises were severe enough for the children to be kept from school. This evidence with all the evidence taken together, including evidence that the children were exposed to their mother's suicidal behavior, to domestic violence, and to sexual materials inappropriate for children, are sufficient to support a conclusion of neglect.
Affirmed.
Judge BRYANT concurs.
Judge TIMMONS-GOODSON concurs in result by separate opinion.
Report per Rule 30(e).
TIMMONS-GOODSON, Judge, concurring in the result.
Although I agree with the majority's conclusion that the trial court did not err, I write separately to distinguish my reasoning in reaching this conclusion, and to address the additional arguments made by respondents on appeal.
Mrs. Collins first argues that the trial court erred by continuing the proceedings over a nine month period. As the majority correctly states, N.C. Gen. Stat. § 7B-803 (2003) authorizes the trial court to continue a juvenile hearing "for as long as is reasonably required" to ensure that sufficient evidence is received and the "best interests of the juvenile" are effectuated. In the instant case, I note that Mrs. Collins made no effort to object to the trial court's continuance of the hearing. Instead, she requested a continuance in the case herself on 24 July 2002, and later joined in Mr. Collins' 27 January 2003 motion to continue the trial. Thus, because I question whether this issue was properly preserved for appeal, and because the record does not indicate that any "delay" in the proceedings resulted in prejudice to Mrs. Collins, I agree with the majority that the trial court didnot err in continuing the non-secure custody proceedings. However, I believe a separate analysis should be applied to Mr. Collins' first argument.
Mr. Collins argues that the trial court erred in denying his 27 January 2003 motion to continue the adjudication hearing. At the beginning of the adjudication hearing, Mr. Collins' counsel moved the court to continue the hearing because Mr. Collins was not present in court. The trial court denied the motion and the adjudication hearing commenced.
Where a party's motion to continue does not concern the availability of evidence or discovery, N.C. Gen. Stat. § 7B-803 requires that "continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile." (emphasis added). Thus, "'[c]ontinuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice.'" In re Humphrey, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (quoting Doby v. Lowder, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984) (citations omitted)).
In the instant case, nothing in the record indicates that the trial court requested or needed additional information to ensure the children's best interests were protected. Furthermore, nothing in the record indicates that the parties needed more time for expeditious discovery in the case. Instead, Mr. Collins' counselmoved the trial court to continue the hearing because Mr. Collins was "not able to get down here because his truck that he would use is not operational." I note that Mr. Collins was aware of the date of the adjudication hearing and had been absent at previous non-secure custody hearings. Because I am not convinced Mr. Collins' inability to obtain proper transportation to the adjudication hearing is an "extraordinary circumstance" that warrants a continuance, I agree with the majority's conclusion that the trial court did not err in denying Mr. Collins' motion to continue the adjudication hearing.
I also agree with the majority's conclusion that the trial court did not err in its disposition order by finding (i) that Mrs. Collins is unfit to have care, custody, or control of the minor children, and (ii) that Mr. Penick is fit to have care, custody, and control of J.P. and C.P.
Evidence presented during the proceedings tended to show that Mrs. Collins had a history of making false representations to others in order to obtain money from them, and that she "continues to exhibit such behavior in the presence of and with the knowledge of her minor children," who, according to evidence presented at trial, are "embarrassed by the actions" of their mother. Evidence also tended to show that Mrs. Collins had previously considered and spoke of committing suicide, that she had written suicide notes to each of her minor children, and that she had jumped out of a moving vehicle in the presence of her children. Evidence tended to show that while the children were in Mrs. Collins' care, the childrenwere exposed to pornography and one child was evaluated for alleged sexual abuse. Evidence also tended to show that Mr. and Mrs. Collins engaged in multiple acts of domestic violence in the presence of the minor children, including yelling, pushing and shoving, and physical fighting and punching. On at least one occasion, Mrs. Collins was holding M.C. while being assaulted by Mr. Collins. Finally, evidence was presented that tended to show that Mrs. Collins imposed and witnessed several acts of corporal punishment on each of her minor children, including spanking and paddling with a wooden paddle. On one occasion, Mrs. Collins witnessed Mr. Collins spank J.C. with a wooden paddle that caused bruising on the child's buttocks. Mrs. Collins subsequently kept J.C. home from school for at least five days to allow the bruising to heal and to prohibit school staff from discovering the bruising. On a second occasion, Mrs. Collins and Mr. Collins tied R.C. to a bed and spanked her with a paddle. After Mr. Collins broke the paddle on R.C.'s hip, R.C. was told, "Go to your room, you stupid bitch." Although Mrs. Collins enrolled in domestic violence and parenting classes, evidence presented at trial tended to show that Mrs. Collins "failed to demonstrate that she has obtained any benefit from the courses or the training received." I conclude that the foregoing evidence sufficiently supports the trial court's finding that Mrs. Collins is unfit to have care, custody, and control of her minor children.
I also conclude that the evidence sufficiently supports the trial court's finding that Mr. Penick "is a fit and proper personto have care, custody and control" of J.P. and C.P. Evidence presented during the proceedings established that Mr. Penick was the biological father of J.P. and C.P. The two children were placed in Mr. Penick's custody during the proceedings, and the evidence tended to show that J.P. and C.P. were "doing very well in that placement." Although Mrs. Collins asserted that Mr. Penick had sexually abused the children, subsequent medical tests established that Mrs. Collins' assertion was without merit. Despite Mrs. Collins' continued insistence to the contrary, there was no physical evidence to support her assertion, and the trial court properly disregarded it.
Mrs. Collins also objects to the trial court's finding "[t]hat [the] disposition order will be filed in [a pending custody action between Mr. Penick and Mrs. Collins] and will be the Order of the Court in that case." However, I note that the appeal in the instant case involves only the trial court's determination of the juvenile proceedings involving Mr. and Mrs. Collins, specifically case file numbers 02 J 264, 02 J 265, 02 J 266, and 02 J 267. Assuming arguendo that the trial court erred in including a reference to the civil custody action in its disposition order, I am not convinced that a different result would have occurred in the instant case had the trial court excluded the finding from its order. Thus, I conclude that any such error was harmless. Therefore, without deciding whether it was proper for the trial court to file the disposition order in the instant case as the final order in a separate case, I agree with the majority'sconclusion that the trial court did not err in making the findings of fact contained within its disposition order.
Mrs. Collins also argues in her brief that the trial court erred in concluding that Mrs. Collins' visitation of J.P. and C.P. "shall be supervised by either the Cumberland County Department of Social Services, the respondent [Mr. Penick] or [Mrs. Penick]." I recognize that this Court has previously held that the trial court "should not assign the granting of [the] privilege of visitation to the discretion of the party awarded custody of the child," but instead "should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place and conditions under which such visitation rights may be exercised." In re Custody of Stancil, 10 N.C. App. 545, 551-52, 179 S.E.2d 844, 849 (1971). However, in the instant case, the trial court's order does not leave the time, place, or conditions of visitation solely in Mr. and Mrs. Penick's discretion. Instead, the order merely requires that Mrs. Collins' visitation be supervised by officials from the Cumberland County Department of Social Services or Mr. and Mrs. Penick. There is no indication in the order nor the record that Mrs. Collins is prevented from filing a motion in the cause requesting specific details and conditions of visitation. Therefore, I conclude that the trial court did not err in ordering supervision of Mrs. Collins' visits with J.P. and C.P.
Finally, I agree with the majority's conclusion that the trial court did not err in finding that the minor children had been both abused and neglected by Mr. and Mrs. Collins. The proceedings werereplete with testimony and evidence tending to show that Mr. and Mrs. Collins created a substantial risk of serious physical injury to the minor children. As discussed above, the evidence presented during the proceedings tended to show that Mr. and Mrs. Collins continuously engaged in various types of domestic violence in front of their children, including verbal and physical fighting. The evidence also tended to show that on at least one occasion, Mr. Collins hit Mrs. Collins while the latter was holding M.C., and that "the minor children were often afraid and scared while they witnessed the acts of domestic violence."
The evidence also tended to show that Mr. and Mrs. Collins' methods of punishing their children created a substantial risk of serious injury to the children as well as an environment injurious to the children's welfare. J.P.'s brother, P.P., testified during the proceedings that J.P. was spanked "every other day for something" by Mr. and Mrs. Collins, who would employ a "hand, belt, fly swatter, or paddle" to discipline the child. Evidence presented at the hearings also tended to show that Mr. and Mrs. Collins tied their children to a bed and spanked the children with a wooden paddle, which on at least one occasion left substantial bruises on the legs, buttocks, and back of M.C. K.C. testified that Mr. Collins spanked M.C. when she was four or five months old "because she was crying too much." I conclude that the evidence in the instant case is sufficient to support a determination that Mr. and Mrs. Collins' method of discipline and parenting "falls below the normative standards imposed upon parents by our society and is[thus] considered neglectful." In re Thompson, 64 N.C. App. 95, 99, 306 S.E.2d 792, 794 (1983). Therefore, I agree with the majority's conclusion that the trial court did not err in finding that Mr. and Mrs. Collins had neglected and abused their children.