IN RE: BRIDGET COLLEEN HUBER, Juvenile

No. 812DC752

(Filed 1 June 1982)

1. Infants § 4— neglected juvenile—constitutionality of statute

The definition of a "neglected juvenile" in G.S. 7A-517(21) is not un-
constitutionally vague; furthermore, the statute does not violate equal protec-
tion provisions since its classification of neglected children is founded upon
reasonable distinctions, affects all persons similarly situated without
discrimination, and has a reasonable relation to the public peace, welfare and
safety.

2. Infants § 4; Parent and Child § 6.3— neglect of child—failure to provide
necessary medical care

In a proceeding instituted by a county department of social services to ob-
tain custody of a child from its mother, the evidence was sufficient to support
a finding that the child was a "neglected child" within the meaning of G.S.
7A-517(21) where it tended to show that the child has a severe speech defect
which can be treated by medical or other remedial care; the child also has a
hearing defect; facilities are available in the county for the treatment and care
of the child without expense to her or her mother, but her mother has refused
to allow the child to receive this necessary medical and remedial care; without
treatment the child will not be educated to her full potential, will suffer emo-
tionally by being unable to communicate with other persons, and will probably
be unable to read; and all of these problems may be overcome with proper
treatment and therapy.

APPEAL by respondent mother from *Bennett, Lanning* and
*Jones, Judges.* Orders filed 11 and 17 February 1981, 6 and 18
March 1981, 8 and 14 April 1981, and 10 June 1981 in District
Court, MECKLENBURG County. Heard in the Court of Appeals 30
March 1982.

The facts and procedural posture of this case are as follows:

1. Petitioner, Mecklenburg County Department of Social
Services (DSS), filed a petition on 8 May 1980 alleging that
Bridget Colleen Huber was a dependent child and/or a neglected
child under N.C.G.S. 7A-517(21). At this time her mother, Kathy
Huber Hazelwood, was incarcerated in the Mecklenburg County
Jail. Bridget was residing with Richard Allen Hazelwood, to
whom she was not related by blood or marriage and who did not
have the resources to care for Bridget. The petition further al-
leged that Bridget suffered from a serious speech defect which

had not been evaluated or treated. Bridget was placed in the temporary custody of DSS, and after a five-day hearing, by order dated 16 May 1980, the court returned custody to the mother, who was then present. DSS took a voluntary dismissal of the 8 May petition.

2. DSS filed a second petition on 13 November 1980, alleging, *inter alia:*

1. That since at least October 14, 1980 the child has resided with her mother and step father at their place of business which is variously known as "E. S. Inc. Escort Service" and "Pleasure Playmates" and which is located in Room C-23 of the Airport Office Center on Wilkinson Boulevard in the city of Charlotte, N.C. Further, that the office consists of a single room of approximately 10 feet by 12 feet with no windows. Further, that the only toilet facilities are in a public restroom down the hall.

2. That the child's mother and step-father are in the business of providing women, including the child's mother, to male "clients", occasionally for lewd and immoral purposes. Further, that clients are given the option of meeting female employees of Pleasure Playmates at the office on Wilkinson Boulevard where the child resides or at a location of their choice.

. . . .

4. That the family has been evicted from the office, effective November 15, 1980 and had, as of November 12, 1980, packed their vehicle with their belongings and are apparently preparing to move from the office. Further, that the family has been the subject of extensive investigation by the City Police Vice Squad and at least one attempted arrest has been made on the premises of the office at which the family is residing.

. . . .

6. That the child has a severe speech defect for which she has not received remedial aid, despite the fact that that same untreated defect was, *inter alia*, the subject of a Juvenile Petition filed in the Mecklenburg County District

Court on May 18, 1980 and which was subsequently dismissed.

Again, by nonsecure custody order, Bridget was placed in the custody of DSS. An adjudicatory hearing was held 3 December 1980. The court found as facts that Bridget had a serious speech defect and a hearing loss; that her mother and stepfather had done nothing to assist the child in obtaining therapy; and that "the child's combined handicaps will significantly hinder her ability to obtain an education even to the degree mandated by State Law. The child runs a substantial risk of suffering educational and emotional damage as a direct result of the failure to remedy or otherwise compensate for the speech and hearing problems." The court further found that there was "no clear and convincing evidence to support the allegations of the Juvenile Petition herein except the allegations pertaining to the substantial speech defect and lack of treatment thereof." The court concluded that Bridget was a neglected child as defined by N.C.G.S. 7A-517(21) and ordered that she remain in the physical and legal custody of DSS. However, on 10 December 1980, Bridget was returned to the physical custody of her mother.

Following a dispositional hearing held 30 December 1980, the court ordered physical custody to remain with the mother, who was, in turn, ordered to cooperate fully with DSS in a regime of speech therapy and in a preschool program. On 10 February 1981 respondent Kathy Huber Hazelwood appealed from this order.

3. On 5 March 1981, while the appeal was pending, DSS filed a third petition, alleging, *inter alia*, that Bridget had been terminated from the day-care program; that her mother had not kept an appointment with the speech and hearing center; and that "on several occasions in January, 1981 and on Monday, March 2, 1981 the child was with her parents at the Waffle House . . . between the hours of 2:00 and 5:00 a.m. and on one or more occasions the child's stepfather repeatedly hit the child in the face with his hands, required the child to eat food when she stated she was sick to her stomach and disciplined the child when she vomited." The court issued a nonsecure custody order, placing Bridget in the physical custody of the DSS. Following a hearing, the court, by order filed 8 April 1981, concluded that "the facts found herein are compelling reasons for this Court to enter an order affecting

the custody and placement of Bridget Colleen Huber in order to effectuate the best interest of the child," and that it was in the child's best interest to remain in the physical and legal custody of DSS.

4. Pursuant to Judge Bennett's order, the matter was scheduled for hearing before Judge Jones on 4 May 1981. During the course of an in-chambers conference, Judge Jones stated that he intended to treat the third juvenile petition as one seeking a modification of the dispositional order which resulted from the 30 December 1980 hearing; that he saw no need for a further hearing; that sufficient evidence had already been presented on the subject of modification; and that he intended to enter an order based on the existing record. An order to this effect was filed 10 June 1981.

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski, for petitioner appellee.*

*Williams & Parker, by John J. Parker III, for the Guardian ad Litem, John J. Parker III, appellee.*

*James, McElroy & Diehl, by William K. Diehl, Jr., for respondent appellant.*

MARTIN (Harry C.), Judge.

[1] Kathy Huber Hazelwood, mother of Bridget Colleen Huber, raises three basic arguments upon appeal. She first contends that the definition of a "neglected juvenile" as contained in N.C.G.S. 7A-517(21) is unconstitutional on its face and as applied to the facts of this case. We do not agree.

The analysis of the law by Judge Vaughn in *In re Biggers*, 50 N.C. App. 332, 274 S.E.2d 236 (1981), is applicable. In *Biggers*, the Court was faced with a constitutional challenge to the definition of "neglected child" within the meaning of N.C.G.S. 7A-289.32(2). That statute refers to N.C.G.S. 7A-278.4 (repealed effective 1 January 1980) for the definition of "neglected child." The definitions in N.C.G.S. 7A-278.4 and 7A-517(21) are substantially identical. In *Biggers*, we find:

Our Supreme Court has enunciated the principles of the vagueness doctrine as follows:

> A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law . . . . Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. *United States v. Petrillo, 332 U.S. 1, 91 L.Ed. 1877, 67 S. Ct. 1538.*

*In re Burrus,* 275 N.C. 517, 531, 169 S.E.2d 879, 888, (1969), *aff'd,* 403 U.S. 528, 91 S. Ct. 1976 (1971) (citations omitted). A statute must be examined in light of the circumstances in each case, and respondent has the burden of showing that the statute provides inadequate warning as to the conduct it governs or is incapable of uniform judicial administration. *State v. Covington,* 34 N.C. App. 457, 238 S.E. 2d 794, *review denied,* 294 N.C. 184, 241 S.E. 2d 519 (1977) . . . .

Our Court has not found it difficult to give a precise meaning to this definition of a neglected child in particular cases by analyzing the factual circumstances before it and weighing the compelling interests of the State with those of the parents and child. *In re Cusson,* 43 N.C. App. 333, 258 S.E.2d 858 (1979); *In re McMillan,* 30 N.C. App. 235, 226 S.E.2d 693 (1976). *See also In re Yow,* 40 N.C. App. 688, 253 S.E.2d 647, *review denied,* 297 N.C. 610, 257 S.E.2d 223 (1979). Viewed in this light, G.S. 7A-289.32(2) is not vague because the terms used in G.S. 7A-278(4) are given a precise and understandable meaning by the normative standards imposed upon parents by our society, and parents are, therefore, given sufficient notice of the types of conduct that constitute child neglect in this State. *See* 17 Ariz. L. Rev. 1055, 1070 (1975).

50 N.C. App. at 340-41, 274 S.E.2d at 241-42. We hold the statutory definition is not unconstitutional by reason of vagueness. *See also In re Clark,* 303 N.C. 592, 281 S.E.2d 47 (1981).

Nor does it violate constitutional safeguards as to equal protection. Again, *Biggers* is authority to overcome respondent's challenge on this ground. The classification of neglected children by the statute is founded upon reasonable distinctions, affects all persons simlarly situated without discrimination, and has a reasonable relation to the public peace, welfare and safety. *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976).

[2] There is substantial competent evidence in the record to support the conclusion of the court that Bridget was a neglected child or juvenile within the meaning of N.C.G.S. 7A-517(21). The statute provides that if a child is not provided necessary medical care, it is neglected. All the evidence shows that Bridget has a severe speech defect which can be treated by medical or other remedial care. She also has a hearing defect. Facilities are available in Mecklenburg County for the treatment and care of Bridget without expense to her or her mother. Although the Department of Social Services has made efforts to have Bridget examined, evaluated and treated at these facilities, her mother refuses to allow her daughter to receive this necessary medical and remedial care. It is not the presence of the defects in the child that cause her to be neglected. It is the failure of the mother to allow Bridget to receive necessary medical and remedial care and treatment. Without treatment Bridget will suffer serious and permanent harm. She will not be educated to her full potential; she will suffer emotionally by being unable to communicate with other persons; she will probably be unable to read. All of these problems may be overcome with proper treatment and therapy. Yet, Bridget's mother refuses to permit her to receive this opportunity to progress toward her full development. Certainly the child is neglected. To deprive a child of the opportunity for normal growth and development is perhaps the greatest neglect a parent can impose upon a child. The facts of this case are well within those of *In re McMillan*, 30 N.C. App. 235, 226 S.E.2d 693 (1976). *McMillan* involved charges of neglect for failing to enroll children in public schools. The Court held that children deprived of their opportunity to a basic education were neglected within the meaning of the statute. The statute is not unconstitutional as applied to the facts of this case.

Respondent objects to further proceedings in the district court after notice of appeal was entered in this case. This argu-

ment is groundless. The clear language of N.C.G.S. 7A-668 allows temporary orders affecting the custody or placement of the juvenile as the judge determines to be in the best interest of the juvenile or the state. Although N.C.G.S. 1-294 states the general rule regarding jurisdiction of the trial court pending appeal, it is not controlling here, where there is a specific statute addressing the matter in question. *See Hughey v. Cloninger*, 297 N.C. 86, 91, 253 S.E.2d 898, 906 (1979). Bridget's case falls squarely within the purposes for which the General Assembly adopted N.C.G.S. 7A-668. Without authority of the district court to provide for the treatment of Bridget pending appeal, a recalcitrant party could frustrate the efforts of the court to provide for her best interests by simply entering notice of appeal. The law is not so foolish. *In re Craddock*, 46 N.C. App. 113, 264 S.E.2d 398 (1980), is sound authority supporting our holding. Our Court held that the district court had authority to enter an order changing custody of a child while an appeal was pending in the case. The statute at that time was N.C.G.S. 7A-289 (which was replaced by N.C.G.S. 7A-668, 1 January 1980), but it was substantially identical to the present act. N.C.G.S. 1-294 and the cases decided thereunder control further action by the trial court in general pending appeal, but with respect to proceedings concerning infants the rule is appropriately different. Infants require, and are entitled to, the uninterrupted protection of the courts.

Respondent's argument on the third issue sought to be presented is not supported by proper assignments of error. The argument is broadside and does not specify in what respects the trial judge erred in the proceeding. *See Adams v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E.2d 402 (1978). The argument does not comply with either Rule 10(a) or 28(a) of the North Carolina Rules of Appellate Procedure, and the argument is subject to dismissal. Nevertheless, we have carefully reviewed the record as best we could with respect to the matters respondent attempts to argue and find no prejudicial error. The record shows that the court complied with the policy of the juvenile statute by selecting the least restrictive disposition. N.C. Gen. Stat. § 7A-646 (1981). It was only after the abject failure of respondent that the court adopted the only means available to it to promote the best interests of Bridget. *Hughes, In re*, 50 N.C. App. 258, 273 S.E.2d 324 (1981).

Affirmed.

Judges MARTIN (Robert M.) and WHICHARD concur.