IN THE MATTER OF SPENCER STRATTON, DOB: 4/14/84; ISAIAH STRATTON, DOB: 10/01/85; SOLOMON STRATTON, DOB: 3/20/89; TANNA STRATTON, DOB: 8/24/90; RACHEL STRATTON, DOB: 4/19/92; SIMON STRATTON, DOB: 3/01/94; MICHELLE STRATTON, DOB: 8/24/95; MARIA STRATTON, DOB: 9/06/96; STEPHANIE STRATTON, DOB: 10/28/97; AND LEAH STRATTON, DOB: 7/02/99 MINOR CHILDREN

No. COA01-1528

(Filed 15 October 2002)

**Parent and Child— neglect—immunization—religious objections—best interest of children**

The trial court did not err by issuing an order requiring the immunization of respondent parents' ten children while in custody of the Department of Social Services (DSS) even though respondents contend their parental rights have not been extinguished and they have religious objections to the immunizations, because: (1) neglect was found and the trial court determined that immunization was in the best interest of the children; (2) respondents acted in a manner inconsistent with their constitutionally protected parental relationship by failing to provide basic necessities for their children; and (3) respondents no longer have authority to object to the immunization pursuant to

IN RE STRATTON

[153 N.C. App. 428 (2002)]

N.C.G.S. § 130A-157 where the children have been adjudicated dependent and neglected by their parents and their legal custody now resides with DSS.

Appeal by respondent-parents from order entered 3 July 2001 by Judge Elizabeth M. Currence in Mecklenburg County District Court. Heard in the Court of Appeals 9 September 2002.

*Leslie C. Rawls for appellant-mother.*

*Rick D. Lail for appellant-father.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Garth A. Gersten and Karen Ousley, guardians ad litem.*

*Mecklenburg County Department of Social Services, by Associate County Attorney Tyrone C. Wade, for petitioner-appellee.*

EAGLES, Chief Judge.

Jack and Cathy Stratton ("appellants") appeal from the trial court's order requiring that their children be immunized. Appellants assign error to the trial court's order that the children be vaccinated in contravention of their parents' bona fide religious beliefs. Appellants allege that the order violated their constitutional rights and exceeded the court's authority. After careful review, we disagree and affirm.

The evidence tends to show the following. On 18 December 2000, the Mecklenburg County Department of Social Services ("DSS") received a report that the ten Stratton children were living in a home where there was inadequate heat and food. Several workers from DSS attempted to visit the home the next day and were intercepted by the father-appellant, Mr. Stratton. Although it was sleeting and raining outside, the father would not allow the DSS workers inside his home. Eventually, the workers called the police.

Father-appellant allowed the children and mother-appellant to leave the family home and walk to the paternal grandmother's house next door. The DSS workers observed ten children in the family, and determined that all ten of the children were in apparent need of some service. The workers noted that only one of the ten children had a coat, none of them had a sweater, and several of them were wearing spring or summer clothing that was wrinkled or dirty.

Appellants would not allow the workers to interview the children separately, which interfered with the workers' ability to perform their investigation.

After the DSS workers spoke with the family, father-appellant allowed the workers to enter the family home. The home was in severe disrepair. The family had been living in squalid conditions. Ceilings in both the kitchen and lone bathroom had holes in them. In the kitchen, a large tub caught water dripping from the ceiling. The tub of water had debris floating in it. The plumbing facilities were in disrepair. No beds or mattresses were found throughout the home. Only two working kerosene heaters were seen in the home, despite the cold outside temperature as evidenced by the sleet and freezing rain earlier that day. The DSS workers found almost no food in the home. Although the father-appellant told the workers that mother-appellant had been home schooling the children, the workers found no records or educational materials to support that claim. Appellants stated that none of the children had ever attended public school.

The following day, 20 December 2000, the workers returned to the family home to find that the Strattons had vacated the premises. DSS eventually found the Strattons in Gaston County, where Mr. Stratton had moved his family in order to avoid Mecklenburg County DSS personnel.

On 30 January 2001, DSS took custody of the children. The children were adjudicated neglected and dependent on 12 March 2001. Once the children were placed in foster care, DSS learned that none of the children had been immunized. The children were prepared for immunization as part of the overall provision of health care services by DSS. Appellants informed DSS that they objected to the children being vaccinated without parental consent. In a letter dated 19 February 2001, appellants set forth their medical and religious objections to the immunizations.

The trial court heard appellants' objections on 25 April 2001. At the hearing, father-appellant testified as follows:

I have many religious objections. I'm a Christian, I believe the Bible. Many Scriptures that I believe you should not vaccinate children. [sic] In the beginning—the Bible says "In the beginning, God created the heavens and earth. God created mankind and God said it was good." That includes the immune system. Also Psalm 91, it says "He who abides under the shadow of the most

**IN RE STRATTON**

[153 N.C. App. 428 (2002)]

high," it says, "10,000 may fall at his right hand, but . . . pestilence will not go near him." Now I believe that. I have faith in God. Also Jesus Christ said that . . . the well do not need a physician but the sick. And I believe it's wrong to take perfectly healthy children and subject them to possible brain damage, possible side effects.

The trial court found that appellants could cite to scriptural passages as a basis for their religious objections, but could not point to any particular provision of their religion that prohibits immunization. The trial court also made the following findings of fact regarding appellants' religious objections:

13. A previous order of this Court has taken the decision making authority for these children away from the parents due to their poor judgment and inability to care for the children in a safe and responsible way, thereby, putting the children at risk.

14. The Court has given the authority to make such decisions to the Department of Social Services.

15. NCGS 130A-152 mandates that "every parent, guardian, person in loco parents and person or agency, whether governmental or private, with legal custody of the child shall have the responsibility to ensure that the child has received the required immunization at the age required." Although § 130A-157 allows for religious exemption, YFS, the agency with legal custody of the children and mandated by statute to have the children immunized, has not requested the exemption.

In its order of 3 July 2001, the trial court concluded that it was in the "best interest of the children that they receive the required immunizations." It then ordered the children to be immunized before 30 July 2001. Parents appeal. We granted appellants' motion for a temporary stay on the execution of the immunization order pending the hearing of this appeal.

Appellants argue that the trial court erred by ordering their children's immunization. Appellants claim that, notwithstanding the trial court order awarding custody of the children to DSS, appellants still have standing to make medical decisions for their children. They base their argument on the fact that DSS has not terminated their parental rights pursuant to G.S. § 7B-1100 *et seq.* Appellants contend that immunization of their children while in the temporary custody of DSS would be a violation of the parents' constitutionally protected religious beliefs. After careful consideration, we disagree.

North Carolina has a strong public policy encouraging immunization of all children. This policy is demonstrated in our statutes:

> Every child present in this State shall be immunized against diphtheria, tetanus, whooping cough, poliomyelitis, red measles (rubeola) and rubella . . . . Every parent, guardian, person in loco parentis and person or agency, whether governmental or private, with legal custody of a child shall have the responsibility to ensure that the child has received the required immunization at the age required . . . .

G.S. § 130A-152 (2001). Before a child can attend school, whether public or private, he or she must present a certificate of immunization. G.S. § 130A-155 (2001). There are two statutory exceptions to the requirement of immunization before a child can attend school in North Carolina: G.S. §§ 130A-156 and 130A-157. G.S. § 130A-156 deals with medical exemptions. The religious exemption, which is at issue here, reads as follows:

> If the bona fide religious beliefs of . . . the parent, guardian, or person in loco parentis of a child are contrary to the immunization requirements contained in this Part, the . . . child shall be exempt from the requirements. Upon submission of a written statement of the bona fide religious beliefs and opposition to the immunization requirements, the person may attend the college, university, school or facility without presenting a certificate of immunization.

G.S. § 130A-157 (2001). Since its amendment and enactment in 1967, G.S. § 130A-157 has not been judicially applied or interpreted. Appellants here contend that they should be allowed to avail themselves of the exemption provided by G. S. § 130A-157 because their parental rights have not been extinguished and immunization violates their religious tenets. We disagree.

In *Prince v. Massachusetts*, 321 U.S. 158, 88 L. Ed. 645 (1944), the United States Supreme Court mandated compliance with child immunization requirements despite religious protests. In the *Prince* case, the Supreme Court stated its firm support of immunizations: "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health and death." *Prince*, 321 U.S. at 166-67, 88 L. Ed. at 653. The Court noted its holding by stating that "neither rights of religion nor rights of parenthood are beyond limitation." *Prince*, 321 U.S. at 166, 88 L. Ed. at 652.

**IN RE STRATTON**

[153 N.C. App. 428 (2002)]

Our courts do not have a history of routinely ordering the performance of medical procedures on children without parental consent. However, when parents refuse to provide necessary medical care, their inaction can extinguish custody and support a finding of neglect. *See In re Huber,* 57 N.C. App. 453, 291 S.E.2d 916, *appeal dismissed and disc. rev. denied,* 306 N.C. 557, 294 S.E.2d 223 (1982). In *Huber,* the child had severe speech and hearing defects which were treatable by therapy and other medical care. The trial court ordered treatment despite the mother's protest, since the child had been adjudicated neglected. The *Huber* case allowed a judge to override a parent's objection to medical treatment when the reason for the adjudication of neglect was the lack of medical treatment itself. Here, the DSS workers found that the Stratton children were all in need of some kind of service, but the parental custody was not interrupted specifically because of a child's urgent medical need.

Appellants argue that because there is no medical emergency or other strong need for immunization, their objections to immunization should take precedence over the trial court's order. We agree that the parental rights of care, custody, and control over a child are held in high regard and will not be interfered with lightly. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents." *Prince,* 321 U.S. at 166, 88 L. Ed. at 652.

However, when the parents' actions towards their child are contrary to the child's best interest or against the public interest, the state may interfere with the usual parental prerogatives as to their children:

> [T]he natural and legal right of parents to the custody, companionship, control and bringing up of their children is not absolute. It may be interfered with or denied for substantial and sufficient reason, and it is subject to judicial control when the interest and welfare of the children require it.

*In re McMillan,* 30 N.C. App. 235, 238, 226 S.E.2d 693, 695 (1976). "When a parent neglects the welfare and interest of his child, he waives his usual right of custody." *In re Hughes,* 254 N.C. 434, 437, 119 S.E.2d 189, 191 (1961). The Supreme Court of North Carolina has held that "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." *Petersen v. Rogers,* 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994). Once it has been determined that a parent is

unfit or has neglected his child, the parent loses his decision-making ability as of right.

The constitutionally protected status of parents is diminished by the parents' neglect of the children and must sometimes give way to consideration of the best interests of the children. As our Supreme Court stated:

> A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. . . . Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents.

*Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 534-35 (1997) (citations omitted). Once unfitness, neglect or other action inconsistent with the parent's constitutionally protected interest has been found, a court should revert to a basic determination of what action is in the best interests of the child. *Id.* Here, the trial court found that immunization was in the best interest of the Stratton children.

The religious exemption outlined in G.S. § 130A-157 is a parental right to be exercised by a parent with a bona fide religious belief contrary to the immunization requirement. Appellants have presented evidence of a religious objection to immunization, and we do not consider the bona fide nature of that objection. However, when the principles of *Petersen* and *Price* are applied to the case at bar, it is clear that appellants no longer have authority to object to the immunization of the children. Here, the children have been adjudicated dependent and neglected by their parents, appellants, and their legal custody now resides with DSS. The children have been removed from their home and placed in foster care because their parents failed to provide adequate shelter, clothing, food, medical care and formal education. By their failure to provide basic necessities for their children, appellants have acted in a manner inconsistent with their constitutionally protected parental relationship. Here, the trial court

correctly focused on the best interest of the children. The placement of the children in the temporary custody of DSS upon the adjudication of neglect was in the best interest of the children, and foreclosed appellants' ability to assert the rights under G.S. § 130A-157. Because appellants have surrendered the companionship, custody, care and control of their children by neglecting their welfare, DSS is now the only party that may legitimately make health decisions for the Stratton children.

For the foregoing reasons, we conclude that the trial court correctly issued an order to immunize the children and affirm that order. Accordingly, we affirm and dissolve the temporary stay preventing execution of the immunization order.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.