BERGER, Judge.
Kevin Eldreth ("Defendant") appeals from an order granting permanent custody of Defendant's daughter, Andrea,[1] to Andrea's maternal great-aunt Wana Turnmire ("Mrs. Turnmire") and great-uncle Jimmy Ray Turnmire ("Mr. Turnmire") (collectively, "Plaintiffs"). Defendant argues that the trial court erred by (1) concluding that Plaintiffs had standing to sue for custody of Andrea and (2) applying the "best interests of the child" analysis. After review, we affirm the order of the trial court, but remand for the trial court to revise one of its findings of fact.
Factual and Procedural Background
Tiffany Ann Stamm ("Stamm") gave birth to Andrea on September 28, 2011. Although Defendant and Stamm never married and were not romantically involved at the time, Defendant was present for Andrea's birth and completed an Affidavit of Parentage. From September through December 2011, Defendant briefly visited Andrea about five times. In January 2012, Defendant moved to Wisconsin, at which time, Defendant began making monthly $ 300.00 child support payments.
After he moved to Wisconsin, Defendant did not contact Stamm regarding Andrea until late summer 2012. At the end of August 2012, Defendant returned to North Carolina for about five to six weeks. While in North Carolina, Defendant briefly visited Andrea twice. In June 2014, Defendant returned to North Carolina to request a paternity DNA test, which proved that he was Andrea's biological father. While he was in North Carolina, Defendant visited Andrea once. After this 2014 visit, Defendant infrequently contacted Andrea by telephone and Skype for a few months before ceasing all communication in March 2015.
Since her birth, Plaintiffs have cared for Andrea's daily needs. When Andrea was about one year old, Stamm and Andrea began living with Plaintiffs. Since then, Andrea has continued to reside with Plaintiffs, except for a brief period when Stamm moved in with her boyfriend. However, even when Stamm and Andrea briefly lived with Stamm's boyfriend, Andrea spent the majority of her time with Plaintiffs, who provided for most of her needs. Plaintiffs and Andrea developed a very close bond.
After becoming addicted to pain medications, Stamm completed an inpatient treatment program in 2016 before she was eventually released to live in a halfway house. In January 2016, the Ashe County Department of Social Services ("DSS") temporarily placed Andrea with Plaintiffs. After thirty days, DSS notified Defendant that, as her biological father, he could take physical custody of Andrea. If he chose to do so, however, Defendant was instructed that he could not remove Andrea from North Carolina. Nevertheless, after claiming physical custody of her, Defendant took Andrea back to Wisconsin.
On February 10, 2016, Plaintiffs filed a complaint against Stamm and Defendant and entered a motion for an ex parte custody order. Plaintiffs requested full custody of Andrea and a court order requiring Defendant to return Andrea to their custody. The trial court agreed, and it entered a temporary custody and protective order that same day awarding Plaintiffs temporary custody of Andrea.
On March 2, 2016, the trial court entered an order finding that Defendant had willfully violated the temporary custody order by failing to return Andrea to Plaintiffs' custody. On March 9, 2016, the trial court entered another temporary order providing for visitation between Andrea and both of her parents. On March 31, 2016, Defendant filed his answer and a counterclaim for custody of Andrea, and a motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction.
The parties' claims were heard in Ashe County District Court on April 13 and May 4, 2016. The trial court denied Defendant's motion to dismiss. On April 20, 2017, the trial court entered a permanent custody order, which granted permanent legal and physical custody of Andrea to Plaintiffs and visitation rights to both parents.
Defendant timely appeals, arguing that the trial court erred by denying Defendant's motion to dismiss for lack of subject matter jurisdiction because Plaintiffs lacked standing to sue for custody. Also, Defendant argues that the trial court erred by applying the "best interest of the child" analysis after it had concluded Defendant had acted inconsistently with his constitutionally protected parental status. On both of these arguments, we disagree.
Analysis
I. Standing
Defendant first asserts that the trial court erred when it determined that Plaintiffs had standing to seek custody of Andrea. Specifically, Defendant argues that Plaintiffs had no parent-child relationship with Andrea, and did not allege that Defendant was unfit as a parent or had acted inconsistently with his parental rights. We disagree.
"We review questions of standing in child custody actions de novo . Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." Wellons v. White , 229 N.C. App. 164, 173, 748 S.E.2d 709, 717 (2013) (citation and quotation marks omitted).
"Both parents and third parties have a right to sue for custody. In a custody dispute between a parent and a non-parent, the non-parent must first establish that he has standing, based on a relationship with the child, to bring the action." Smith v. Barbour , 154 N.C. App. 402, 408, 571 S.E.2d 872, 877 (2002) (citation omitted).
If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.... When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, i.e. , as if it had never happened. Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings.
Rodriguez v. Rodriguez , 211 N.C. App. 267, 270, 710 S.E.2d 235, 238 (2011) (purgandum[2] ).
"Any parent, relative, or other person ... claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child." N.C. Gen. Stat. § 50-13.1(a) (2017). Where a non-parent is seeking custody, that party "must allege facts demonstrating a sufficient relationship with the child and then must demonstrate that the parent has acted in a manner inconsistent with his or her protected status as a parent." Moriggia v. Castelo , --- N.C. App. ----, ----, 805 S.E.2d 378, 385 (2017). "No litmus test or set of factors can determine whether this standard has been met. Instead, the legal parent's conduct would, of course, need to be viewed on a case-by-case basis." Estroff v. Chatterjee , 190 N.C. App. 61, 64, 660 S.E.2d 73, 75 (2008) (citation and quotation marks omitted).
If a party is considered to be a "relative" to the child under Section 50-13.1(a), then that party is only required to allege his or her biological relationship with the child. Rodriguez , 211 N.C. App. at 275-76, 710 S.E.2d at 241. A " 'relative' has been defined as a person connected with another by blood or affinity; a person who is kin with another." Yurek v. Shaffer , 198 N.C. App. 67, 77, 678 S.E.2d 738, 745 (2009) (citation and quotation marks omitted). If the party is not biologically related to the child, the party may only establish standing as an "other person" by alleging facts showing that he or she shares a "relationship in the nature of a parent-child relationship" with the child. Ellison v. Ramos , 130 N.C. App. 389, 395, 502 S.E.2d 891, 895 (1998). A non-parent, who voluntarily assumes the role and responsibilities of a natural parent, stands "in loco parentis, " i.e. , "in the place of a parent." Liner v. Brown , 117 N.C. App. 44, 48, 449 S.E.2d 905, 907 (1994) (citations and quotation marks omitted).
All non-parent parties must also allege facts demonstrating that the parent has acted in a manner inconsistent with his or her protected status as a parent to establish standing. Yurek , 198 N.C. App. at 75, 678 S.E.2d at 744. When assessing the sufficiency of these alleged facts, "there is no bright line" beyond which a parent is found to be acting inconsistently with his or her protected status. Moriggia , --- N.C. App. at ----, 805 S.E.2d at 385 (citation and quotation marks omitted). "[C]onduct rising to the statutory level warranting termination of parental rights is unnecessary. Rather, unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct can also rise to this level so as to be inconsistent with the protected status of natural parents." Id. (citation and quotation marks omitted).
"It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." Pratt v. Bishop , 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). Parental unfitness has been shown when the non-parent has alleged facts such as: "(i) the parents have not provided safe and suitable housing for their children; (ii) the parents have not contributed to child support; (iii) the parents have not been involved in the children's upbringing; and (iv) the children are at substantial risk of harm from the parents." Wellons , 229 N.C. App. at 176, 748 S.E.2d at 719 (citation and quotation marks omitted).
Here, because Plaintiffs alleged in the complaint that Mrs. Turnmire is Andrea's great aunt, Plaintiffs are considered Andrea's biological "relatives" under Section 50-13.1(a). Also in their complaint, Plaintiffs further alleged Defendant "has had very limited contact with [Andrea] and provided little, if any, care for her since her birth." The complaint described Defendant's addiction issues, his inability to care for Andrea, and his intentionally estranged relationship with Andrea, which demonstrate that Defendant is unfit as a parent because he deliberately neglected Andrea and his responsibilities as her father. Because Plaintiffs have alleged sufficient facts in the complaint to demonstrate their biological relationship with Andrea and that Defendant acted inconsistently with his protected status as Andrea's parent, the trial court did not err in concluding that Plaintiffs had standing.
II. Application of the "Best Interest of the Child" Analysis
Defendant also contends that the trial court's findings of fact do not support its conclusion that Defendant had acted inconsistently with his constitutionally protected parental status, and the trial court therefore erred by applying the "best interest of the child" analysis. Defendant also contests the trial court's fourth finding of fact by arguing that competent evidence does not support the finding that Defendant has paid $ 804.82 in child support payments and began making such payments in 2014. We agree that the child support finding is not supported by competent evidence, but disagree with the contention that the trial court erred in concluding that Defendant acted inconsistently with his constitutionally protected parental status.
"The standard of review on appeal from a non-jury trial is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. We review the trial court's conclusions of law de novo. " 42 East, LLC v. D.R. Horton, Inc. , 218 N.C. App. 503, 508, 722 S.E.2d 1, 5 (2012) (citations and quotation marks omitted).
[I]n custody cases, the trial court sees the parties in person and listens to all the witnesses. This allows the trial court to detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges. Accordingly, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.
Adams v. Tessener , 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citations and quotation marks omitted). Additionally, "[w]here no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citation omitted). Therefore, "the scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal." Id. at 98, 408 S.E.2d at 73 (citing N.C.R. App. P. 10(a) ).
The Fourteenth Amendment [of the United States Constitution] provides that no State shall deprive any person of life, liberty, or property without due process of law. The interest implicated in the case before us ... is a natural parent's liberty interest in the companionship, custody, care, and control of his or her child. The United States Supreme Court has recognized that this interest is protected by the [United States] Constitution.
Price v. Howard , 346 N.C. 68, 74, 484 S.E.2d 528, 531 (1997) (citation and quotation marks omitted).
"[T]he Due Process Clause of the Fourteenth Amendment ensures that the government does not impermissibly infringe upon a natural parent's paramount right to custody solely to obtain a better result for the child." Owenby v. Young , 357 N.C. 142, 148, 579 S.E.2d 264, 268 (2003) (citation omitted). However, "[t]he natural and legal right of parents to the custody, companionship, control and bringing up of their children is not absolute. It may be interfered with or denied for substantial and sufficient reason, and it is subject to judicial control when the interest and welfare of the children require it." In re Stratton , 153 N.C. App. 428, 433, 571 S.E.2d 234, 237 (2002) (citation and quotation marks omitted). Because "the decision to remove a child from the custody of a natural parent must not be lightly undertaken[,] ... a trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." Adams , 354 N.C. at 63, 550 S.E.2d at 503.
In a child custody dispute between a parent and a non-parent, "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." Petersen v. Rogers , 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994). "In other words, the trial court may employ the 'best interest of the child' test only when the movant first shows, by clear and convincing evidence, that the natural parent has forfeited his or her constitutionally protected status." Owenby , 357 N.C. at 148, 579 S.E.2d at 268. Therefore, "[u]ntil, and unless, the movant establishes by clear and convincing evidence that a natural parent's behavior, viewed cumulatively, has been inconsistent with his or her protected status, the 'best interest of the child' test is simply not implicated." Id.
Trial courts must determine whether a parent has waived his or her paramount parental interest "on a case-by-case basis." Mason v. Dwinnell , 190 N.C. App. 209, 218, 660 S.E.2d 58, 64 (2008) (citation and quotation marks omitted). "[B]oth conduct and intent are relevant in making this determination." Heatzig v. MacLean , 191 N.C. App. 451, 455, 664 S.E.2d 347, 351 (2008) (citation and quotation marks omitted). "[B]y looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent.... In such a case, we cannot conclude that [the parent] acted inconsistently with his constitutionally protected paramount parental status." Sides v. Ikner , 222 N.C. App. 538, 554, 730 S.E.2d 844, 854 (2012) (citations and quotation marks omitted).
When examining a legal parent's conduct to determine whether it is inconsistent with his or her constitutionally-protected status, the focus is not on whether the conduct consists of "good acts" or "bad acts." Rather, the gravamen of "inconsistent acts" is the volitional acts of the legal parent that relinquish otherwise exclusive parental authority to a third party.... [Nevertheless,] encouraging a child to view a third person, with whom the child lives, as a parent and to develop a parent-child bond with that person with the expectation that it would continue and then severing that relationship cannot be viewed as benign conduct....
Our Supreme Court recognized these effects 50 years ago in In re Gibbons , 247 N.C. 273, 280, 101 S.E.2d 16, 21-22 (1957), when it held that the legal right of a parent to custody may yield to the interests of the child when the parent
has voluntarily permitted the child to remain continuously in the custody of others in their home, and has taken little interest in [the child], thereby substituting such others in his own place, so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the love and affection of the child and the foster parents have become mutually engaged, to the extent that a severance of this relationship would tear the heart of the child, and mar his happiness.
The [Gibbons ] Court explained that the biological father, having permitted the family unit of his child and his grandmother to develop, claims the right, because he is the father, to sever the ties which bind this child to the respondent. The [Gibbons ] Court held: In this instance the welfare of the child is paramount. The dictates of humanity must prevail over the whims and caprice of a parent.
Mason , 190 N.C. App. at 228-29, 660 S.E.2d at 70-71 (purgandum ).
It is also appropriate "to consider the legal parent's intentions regarding the relationship between his or her child and the third party during the time that relationship was being formed and perpetuated." Estroff , 190 N.C. App. at 69, 660 S.E.2d at 78. For example, our Supreme Court has recognized
that there are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody, such as under a foster-parent agreement or during a period of service in the military, a period of poor health, or a search for employment. However, to preserve the constitutional protection of parental interests in such a situation, the parent should notify the custodian upon relinquishment of custody that the relinquishment is temporary, and the parent should avoid conduct inconsistent with the protected parental interests. Such conduct would, of course, need to be viewed on a case-by-case basis, but may include failure to maintain personal contact with the child or failure to resume custody when able.
Price , 346 N.C. at 83-84, 484 S.E.2d at 537.
First, Defendant contends here that competent evidence does not support a portion of Finding #4, which states: "Since [2014, Defendant] has paid some amount of child support through the IV-D program currently in the amount of $ 804.82." However, Plaintiffs have conceded that Defendant began paying $ 300.00 per month in child support, beginning in 2012, and competent evidence in the record confirms this. Therefore, we remand for the trial court to revise Finding #4 accordingly.
This Court has long held that "visitation and child support rights are independent rights accruing primarily to the benefit of the minor child and that one is not, and may not be made, contingent upon the other." Appert v. Appert , 80 N.C. App. 27, 41, 341 S.E.2d 342, 350 (1986) ; see also Sowers v. Toliver , 150 N.C. App. 114, 118, 562 S.E.2d 593, 595 (2002) ("The duty to provide financial support is independent of visitation rights and one may not be made contingent upon the other." (citation omitted)). Therefore, disregarding the misstatement in Finding #4, we now turn to whether the remaining and otherwise uncontested findings support the trial court's conclusion that Defendant had acted inconsistently with his rights as a parent.
The trial court concluded that Plaintiffs had "proven by clear, cogent and convincing evidence" that Defendant had acted inconsistently with his constitutionally protected status as Andrea's parent, and therefore, stated that "the test for determining custody and placement of the child is the best interests of the child." The trial court made several findings of fact to support this conclusion.
The trial court found that Defendant voluntarily relinquished custody of Andrea to Plaintiffs when he chose to move to Wisconsin in January 2012 to seek employment knowing that Plaintiffs would continue to house and care for Andrea. The trial court further found that Defendant's "very limited and infrequent contact" with Andrea became even more scarce after his voluntary relocation. Although the trial court recognized that Defendant's contact was somewhat limited by the fact that he lived in Wisconsin, it found that Defendant only arranged to have Andrea visit him in Wisconsin once; had "only come back to North Carolina infrequently"; rarely contacted Andrea by telephone or Skype; had no contact with Andrea over a sixteen-month period; and "rarely visited her for special holidays, Christmas, birthdays, etc."
Additionally, the trial court's findings also illustrate that Defendant was able to resume custody of Andrea prior to seeking custody in 2016, but he chose not to do so. Although Defendant originally moved to Wisconsin to seek employment in 2012, Defendant "works regularly" and financially supports his other children in Wisconsin. Moreover, Defendant sought visitation for his two other children, but Defendant never sought custody or visitation with Andrea until DSS contacted him in January 2016. Defendant had no contact with Andrea for a sixteen-month period prior to January 2016. After DSS contacted him in January 2016, Defendant then flew to North Carolina to take physical custody of Andrea. The trial court's findings demonstrate that Defendant did not independently seek custody of Andrea in January 2016, but only sought physical custody of Andrea after DSS urged him to do so.
Thus, by demonstrating that Defendant voluntarily neglected Andrea and his responsibilities as her parent, the trial court's findings of fact support its conclusion that Defendant had acted inconsistently with his parental status. Because Defendant has "voluntarily permitted the child to remain continuously in the custody of [Plaintiffs] in their home, and has taken little interest in [the child], thereby substituting such others in his own place, so that they stand in loco parentis to the child," Defendant's legal rights a parent should also "yield to the interests of the child ... to the extent that a severance of this relationship [between Andrea and Plaintiffs] would tear the heart of the child, and mar [her] happiness." Mason , 190 N.C. App. at 229, 660 S.E.2d at 71 (citations and quotation marks omitted). Therefore, the trial court did not err by applying the "best interest of the child" standard in granting custody of Andrea to Plaintiffs instead of Defendant.
Conclusion
Plaintiffs had standing to sue for custody of Andrea, and the application of the "best interest of the child" analysis was not in error. However, we remand for the trial court to revise the above-mentioned misstatement in Finding #4 of the April 20, 2017 permanent custody order.
AFFIRM IN PART; REMAND IN PART.
Report per Rule 30(e).
Judges BRYANT and MURPHY concur.

Pseudonyms are used throughout to protect the identity of the child and for ease of reading.

Our shortening of the Latin phrase "Lex purgandum est. " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.